UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

APR 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-192-GWU

SHEILA FLETCHER,                                          PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT,

INTRODUCTION

Sheila Fletcher brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work?  If yes, the claimant is not disabled.  If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.  Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. 404.1521, 416.921.   The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).  The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work.  Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved.  When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e).  It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985).  Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe.  Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.  1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary."   20   C.F.R.   404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b), 416.967(b).  A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

DISCUSSION

The Administrative Law Judge (ALJ) concluded that Fletcher, a 46 year-old woman with a "limited" education, suffered from impairments related to myofascial pain in the neck, shoulders, hands and lower extremities. (Tr. 23). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 23). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 23-24). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 22-23).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Sparrow included an exertional limitation to light level work along with such non-exertional

restrictions as an inability to more than occasionally climb or stoop and a need to avoid exposure to temperature extremes, particularly cold temperatures. (Tr. 308). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 309). Therefore, assuming that the vocational factors considered by Sparrow fairly characterized Fletcher's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Fletcher's condition, as required by Varley. The question included all of the physical restrictions identified by Dr. James Ramsey (Tr. 172-181) and Dr. John Rawlings (Tr. 243-252), the non-examining medical reviewers. Dr. John Gilbert, a treating source, noted when he last saw the plaintiff in March of 2002 that she was doing "fine" and had no complaints. (Tr. 213). Dr. Gilbert did not report the existence of any limitations which would preclude work. (Tr. 213-227). Dr. Jaya Pampati, another treating source, also did not report the existence of more severe physical restrictions than those found by the ALJ. (Tr. 203-212, 260-264). These reports provide substantial evidence to support the administrative decision.

Fletcher argues that the ALJ erred in rejecting the physical restrictions identified by Dr. Harry Weiser, an examining consultant. Dr. Weiser identified extremely severe functional limitations following an April, 2001 examination. (Tr. 268). The ALJ rejected this opinion because he did not believe that it was supported by the doctor's findings, and felt it was incompatible with other evidence of record. (Tr. 22). This finding would appear appropriate. The physician cited an MRI Scan which revealed no evidence of degenerative joint disease, stenosis or herniated nucleus pulposus and an EMG which revealed no evidence of carpal tunnel syndrome. (Tr. 266). The claimant was noted to be

6

neurologically intact and straight leg raising was negative.   (Tr. 266).
Furthermore, Dr. Weiser examined the plaintiff well before her October 29, 2001
SSI filing date and, so, his examination was before the relevant time period.[1]
While the ALJ relied upon the non-examining reviewers for the functional
limitations, an ALJ may rely upon a non-examiner over an examining source,
when the non-examiner clearly states the reasons for his differing opinion.
Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).   Dr. Rawlings noted a
number of factors which supported his opinion including physical findings of
normal motor strength in all extremities, normal neural functioning, normal
tendon reflexes, and only a mild restriction of cervical spine motion.  (Tr. 172).
Thus, the ALJ properly rejected Dr. Weiser's opinion in favor of that of the
medical reviewer.

Fletcher also asserts that the ALJ erred in rejecting the opinion of her
treating source at The Pain Treatment Center that she was unable to work.  (Tr.
163).  However, this note was signed by Jason Wright, a physicians' assistant
rather than a medical doctor.   Under the federal regulations, a physician's
assistants is not an "acceptable medical source" whose opinion is binding on the
ALJ.  20 C.F.R. Section 416.913.  Therefore, the ALJ could properly reject this
opinion.

The ALJ also dealt properly with the evidence relating to Fletcher's mental
condition.  Dr. Jack Eardley examined the plaintiff and diagnosed a depressive
disorder.  (Tr. 186).  However, Dr. Eardley specifically indicated that the plaintiff
could make social and personal adjustments and suggested that any

---

[1]The proper inquiry in an application for SSI benefits is whether the plaintiff was
disabled on or after her application date.  Casey v. Secretary of Health and Human
Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

occupational limitations would relate to physical rather than mental problems. (Tr. 186-187). Psychologists Ilze Sillers (Tr. 188) and Laura Cutler (Tr. 228), the non-examining medical reviewers, each opined that the claimant did not suffer from a "severe" mental impairment. Therefore, the ALJ properly concluded that Fletcher did not suffer from any mental restrictions.

Fletcher asserts that the ALJ erred in failing to consider her impairments "in combination." However, the Court has already found that the hypothetical question fairly depicted the plaintiff's condition. Therefore, the ALJ necessarily considered these problems in combination.

Finally, Fletcher argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Fletcher was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. As previously noted, the plaintiff had no complaints when she saw Dr. Gilbert in March of 2002. (Tr. 213). In January of 2002, ANA and rheumatoid factor testing was negative. (Tr. 207). An MRI Scan of the cervical spine revealed no abnormalities. (Tr. 206). NCV studies of the upper extremities were normal. (Tr. 205). The plaintiff was reported to be neurologically intact in October of 2001 at the Pain Treatment Center. (Tr. 162).

Therefore, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.   Therefore, the ALJ would appear to have properly evaluated Fletcher's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.   Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.   A separate judgment and order will be entered simultaneously consistent with this opinion.

This the _____ 20 _____ day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE

9